1

THE HONORABLE RICHARD A. JONES

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10   SPRY FOX, LLC, a Washington Limited Liability
Company,

11

Plaintiff,

12

v.

13

14   LOLAPPS, INC., a Delaware Corporation;
LOLAPPS MERGER SUB, INC., a Delaware
Corporation; 6Waves LLC, a Delaware Limited

15   Liability Company; and DOES 1-10, inclusive,

16

Defendants.

Civil Action No. 2:12-cv-00147-RAJ

**DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S
COMPLAINT FOR
INFRINGEMENT**

Noted for Hearing:  March 23, 2012

**Oral Argument Requested**

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................1

II.     ALLEGATIONS OF THE COMPLAINT ................................................2

III.    ARGUMENT.......................................................................................3

     A.    The Complaint Must Allege Facts Sufficient to Infer Infringement ...............3

     B.    Spry Fox's Copyright Claim Fails ..............................................................4

          1.    Game Rules, Play, Mechanics, and Ideas Are Not Copyrightable.........................................................................4

               i.    The Copyright Act and the Copyright Office's Interpretation of It Provide That Game Rules Are Not Copyrightable ...............................................4

               ii.   Case Law Also Excludes Game Rules from Copyright Protection.......................................................5

          2.    Spry Fox Alleges Copyright Infringement of Non-Copyrightable Elements Only........................................8

          3.    The Court Should Award 6waves Its Costs and Attorneys' Fees for Defending Against This Copyright Claim...........................11

     C.    Spry Fox's Trademark Claim Fails.............................................................12

IV.     CONCLUSION.......................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*,
   513 F.2d 1183 (2d Cir. 1975) ........................................................................... 5

5

6

*Allen v. Academic Games League of Am.*,
   89 F.3d 614 (9th Cir. 1996) ............................................................................... 6

7

*Anti-Monopoly, Inc. v. Gen. Mills Fun Group*,
   611 F.2d 296 (9th Cir. 1979) ............................................................................. 7

8

9

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) .............................................. 3, 11, 12, 15

10

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
   672 F.2d 607 (7th Cir. 1982) .......................................................................... 4, 6

11

12

*Bell Atl. Corp, v. Twombly*,
   550 U.S. 544 (2007) ....................................................................... 3, 11, 15

13

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ............................................................................. 13

14

15

*Capcom Co. Ltd. v. MKR Group, Inc.*,
   No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .................. 13, 14

16

*Data East USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) ............................................................................. 7

17

18

*Decorative Aides Corp. v. Staple Sewing Aides Corp.*,
   497 F. Supp. 154 (S.D.N.Y. 1980) ..................................................................... 8

19

*Fantasy, Inc. v. Fogerty*,
   94 F.3d 553 (9th Cir. 1996) ............................................................................. 11

20

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
   198 F.3d 1143 (9th Cir. 1999) ......................................................................... 12

21

22

*Glenmore Distilleries Co. v. Nat'l Distillers Prods. Corp.*,
   23 F. Supp. 928 (E.D. Va. 1938) ................................................................ 14, 15

23

*Halicki Films, LLC v. Sanderson Sales & Marketing*,
   547 F.3d 1213 (9th Cir. 2008) ......................................................................... 11

24

25

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894, 902 (9th Cir. 2002) ................................................................ 2, 13

26

*MGIC Indem. Corp. v. Weisman*,
 803 F.2d 500 (9th Cir. 1986) ........................................................................... 13

*Midway Mfg. Co. v. Bandai-Am., Inc.*,
 546 F. Supp. 125 (D.N.J. 1982) .......................................................................... 6

*Morrissey v. Procter & Gamble Co.*,
 379 F.2d 675 (1st Cir. 1967) ......................................................................... 5, 8

*Newton v. Diamond*,
 388 F.3d 1189 (9th Cir. 2004) ............................................................................ 8

*Old Charter Distillery Co. v. Continental Distilling Corp.*,
 174 F. Supp. 312 (D. Del. 1959) ....................................................................... 15

*Russell v. Ne. Publ'g Co.*,
 7 F. Supp. 571 (D. Mass. 1934) ......................................................................... 5

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ............................................................................. 3

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
 245 F.3d 1048 (9th Cir. 2001) ......................................................................... 11

*Whist Club v. Foster*,
 42 F.2d 782 (S.D.N.Y. 1929) ............................................................................. 5

*Zobmondo Entm't LLC v. Falls Media LLC*,
 CV 06-3459ABCJTLX, 2009 WL 202034 (C.D. Cal. Jan. 23, 2009) ..................... 12

**Statutes**

15 U.S.C. §§ 1114, 1125(a) ................................................................................ 12

17 U.S.C. § 102(b) .............................................................................................. 4

17 U.S.C. § 505 ................................................................................................. 11

**Other Authorities**

2 William A. Patry, Patry on Copyright § 4:20 (2007) ........................................... 4

Copyright Act Section 102(b) .............................................................................. 4

Copyright Reg. No. VAu000362713 ...................................................................... 4

Copyright Reg. No. VAu000666397 ...................................................................... 4

U.S. Patent No. 5,265,888 ................................................................................... 7

U.S. Patent No. 6,062,978 ................................................................................... 7

DEFENDANTS' MOTION TO DISMISS COMPLAINT - iii
Civil Action No. 12-cv-147

**BYRNES ♦ KELLER ♦ CROMWELL** LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

U.S. Patent No. 6,264,198.................................................................................................... 7

U.S. Patent No. 6,669,565.................................................................................................... 7

U.S. Patent Pub. No. US 2011/0151976 A1 ........................................................................ 7

U.S. Patent Pub. US 2009/0088235 ..................................................................................... 7

U.S. Patent Pub. US 2010/0069133 A1 ............................................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 3, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants (hereinafter, 6waves) move to dismiss Spry Fox, LLC's complaint for copyright and trademark infringement on the basis that it fails to state a claim upon which relief can be granted.

## I.      INTRODUCTION

Spry Fox's story is this:  Pursuant to a non-disclosure agreement, Spry Fox gave 6waves confidential access to its game *Triple Town*, and 6waves stole *Triple Town* to develop its own game, *Yeti Town*.  Curiously, Spry Fox does *not* bring any claim that 6waves breached its NDA with Spry Fox.  That is because it cannot:  6waves (and its access to *Triple Town*) had nothing to do with the development of *Yeti Town*.  A company with no affiliation to 6waves independently developed *Yeti Town*, and 6waves later purchased that company, a full month after the release of *Yeti Town*.  So, knowing it cannot bring a breach of contract action because *Yeti Town* was independently developed, Spry Fox alleges copyright infringement—arguing that the games are substantially similar—and trademark infringement—arguing that the name *Yeti Town* is confusingly similar to the name *Triple Town*.  Both claims fail.

Spry Fox's copyright claim fails because copyright does not protect the idea of a game or its functional aspects, such as game rules, play and mechanics.  While copyright can protect expressive, non-functional aspects of a game, such as the background music and specific visual depiction of characters and background art, Spry Fox's complaint does not allege copying of any such thing.  Even a cursory side-by-side comparison of the two games reveals that they look nothing alike—so Spry Fox cannot (and does not) allege that *Yeti Town* contains any expressive elements of *Triple Town*.  Instead, Spry Fox spends a great deal of time alleging that *Yeti Town* and *Triple Town* employ the same rules and have the same underlying idea—such as the way players earn and spend coins, that players must fill a 6 by 6 grid with objects, and that players work to immobilize the nemesis of the game.  But none of these elements are copyrightable.  In fact, at least one district court in this Circuit has found that defending baseless claims like

**BYRNES ♦ KELLER ♦ CROMWELL** LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

these—namely, copyright claims over game rules—results in an award of attorneys' fees to the defendant under the Copyright Act.

Spry Fox's trademark claim fails as well.  Even assuming a valid trademark over the name *Triple Town* (which is doubtful), *Yeti Town* does not infringe under firmly-established Ninth Circuit trademark law.  This law provides for infringement of a title only if "the [accused] title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, . . . [it] explicitly misleads as to the source or content of the work."  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (internal citations omitted).  Here, the name *Yeti Town* expressly and unambiguously describes the yeti-filled virtual town in which players play the game, and the name does not by its own terms mislead as to its source.

## II.   ALLEGATIONS OF THE COMPLAINT

Spry Fox claims that *Yeti Town* infringes its copyright to *Triple Town*.  Complaint, ECF No. 1 ("Complaint") at ¶¶ 31-46.  To support this claim, Spry Fox points to various game ideas, rules, play, and mechanics in *Yeti Town* and alleges that those ideas, rules, play and mechanics are virtually identical to those in *Triple Town*.  *Id.* at ¶¶ 23-24, 31-40.  A comprehensive list of these ideas, rules, play, and mechanics is provided and discussed further below.  Briefly, *Triple Town* is a "match-three" game in which players attempt to match three identical elements together—just as one does in the classic game Bejewelled or, more simply, with a slot machine.  Other than conclusory, non-factual allegations, the complaint is devoid of a single allegation or implication that any element of *Yeti Town* looks like an element of *Triple Town*.  This, too, is discussed and shown in detail below.

Spry Fox further claims that the name *Yeti Town* infringes its trademark to *Triple Town*.  *Id.* at ¶¶ 47-57.  While Spry Fox concludes that *Triple Town* "has become associated with, distinctive of and consequently identifies, Spry Fox," and that 6waves's use of the term *Yeti Town* is "likely to cause confusion, mistake, or deception among customers," it provides no factual support for the two marks being confusingly similar.  *Id.*  And, importantly, it does not

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 2
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

allege that the *Yeti Town* name in and of itself has caused any customer confusion as to its source.

Finally, Spry Fox alleges that Spry Fox entered into a non-disclosure agreement with 6waves, pursuant to which 6waves received access to a confidential version of *Triple Town*.  *Id.* at ¶¶ 21-22.  The implication, of course, is that 6waves stole this confidential version of *Triple Town* to develop *Yeti Town*.  But this is a red herring.  Neither 6waves nor anyone acting at 6waves's direction developed *Yeti Town*.  Rather, a non-affiliated company developed *Yeti Town*, and 6waves later purchased that company.  And Spry Fox knows it, as it failed to bring a claim for breach of contract.

## III.   ARGUMENT

### A.   The Complaint Must Allege Facts Sufficient to Infer Infringement

Under Federal Rule of Civil Procedure 12(b)(6), a complaint is insufficient where it fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court further explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief."

*Id.* (internal quotations and citations omitted).  Under this standard, (1) a court need not accept legal conclusions in a complaint as true, and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (The court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").  Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal,* 129 S. Ct. at 1950.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 3
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

**B.** **Spry Fox's Copyright Claim Fails**

> **1.** **Game Rules, Play, Mechanics, and Ideas Are Not Copyrightable**

> > **i.** **The Copyright Act and the Copyright Office's Interpretation of It Provide That Game Rules Are Not Copyrightable**

To prove copyright infringement, a plaintiff must prove that the defendant copied *protected* elements of the plaintiff's copyrighted work. *See Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982). Section 102(b) of the Copyright Act states:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). By using the word "or," the statute lists these exclusions—ideas, procedures, processes, systems, methods of operation, concepts, or discoveries—disjunctively. Thus, each has independent force and effect.

Game rules, play, mechanics, and ideas fall squarely within the category of elements not protected by copyright, and the distinction between the unprotectable elements of a game and its protectable ones is not difficult to ascertain in a given work. Take chess as an example. The rules and idea of the game are familiar and, even if invented today, uncopyrightable. Yet creators often receive copyright protection for chess sets. *See, e.g.*, Copyright Reg. No. VAu000362713 ("Nautically designed chess set"); Copyright Reg. No. VAu000666397 ("Chess set, sculpture of Michelangelo"). A nautical chess set and a Michelangelo chess set would have identical rules. The differences lie in the expressive/non-functional elements of the games. That is, the king of the nautical chess set might be a ship captain; the king of the Michelangelo chess set might be David. Altering these aspects would not have any impact on the functioning of the game. And all this is true regardless of whether the game is in board or electronic form. *See generally* 2 William A. Patry, *Patry on Copyright* § 4:20 (2011) ("Computer programs that permit the play of electronic chess games may be protected, but on a basis no different from any

other computer program.  The actual chess game pieces are sometimes highly creative works of sculpture and may be protected as such, as may a 'chess set' that consists of original chess pieces and original text sold as an ensemble.").

The current Copyright Office Circular on "Games" is consistent with this fundamental distinction between the copyrightable and uncopyrightable aspects of a game:

> Copyright does not protect the idea for game, its name or title, or the method or methods for playing it.  Nor does copyright protect any idea, system, method, device, or trademark material involved in developing, merchandising, or playing a game.  Once a game has been made public, nothing in the copyright law prevents others from developing another game based on similar principles.  Copyright protects only the particular manner of an author's expression in literary, artistic, or musical form.

*Available at* http://www.copyright.gov/fls/fl108.html.

### ii.   Case Law Also Excludes Game Rules from Copyright Protection

Dating as far back as the early 1900s, copyright law has expressly excluded from its scope game rules and ideas.  In *Affiliated Enterprises v. Gruber*, the First Circuit held that the rules and overall system for a lottery game "Bank Night" could not be copyrighted, reasoning: "However good and valuable an idea, plan, scheme, or system is, the moment it is disclosed to the public without the protection of patent, it becomes public property[.]"  86 F.2d 958, 961 (1st Cir. 1936); *see also Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir. 1967) (holding rules for a sweepstakes contest uncopyrightable); *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1188 (2d Cir. 1975) ("No claim is of course made that appellant can protect the game of Caroms or its variations which are in the public domain.  The rules of the game are perforce in the public domain as well as the game itself."); *Whist Club v. Foster*, 42 F.2d 782 (S.D.N.Y. 1929) ("In the conventional laws or rules of a game, as distinguished from the forms of modes of expression in which they may be stated, there can be no literary property susceptible of copyright."); *Russell v. Ne. Publ'g Co.*, 7 F. Supp. 571 (D. Mass. 1934) (holding uncopyrightable a book describing a set of rules and problems relating to contract bridge).

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 5
Civil Action No. 12-cv-147

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The Ninth Circuit explained the principle of excluding protection for game rules in *Allen v. Academic Games League of America, Inc.*:

> This doctrine of merger is particularly applicable with respect to games "since they consist of abstract rules and play ideas. . . . Allen has not shown that it is possible to distinguish the expression of the rules of his game manuals from the idea of the rules themselves. Thus, the doctrine of merger applies and although Allen may be entitled to copyright protection for the physical form of his games, he is not afforded protection for the premises or ideas underlying those games. To hold otherwise would give Allen a monopoly on such commonplace ideas as a simple rule on how youngsters should play their games.

89 F.3d 614, 617-618 (9th Cir. 1996) (citations omitted).

Video game case law is consistent with the basic proposition that rules and ideas of a game are not copyrightable, but non-functional expressive aspects are. In *Atari*, the Seventh Circuit examined whether the videogame *K.C. Munchkin* infringed the famous game *PAC-MAN*. The court dismissed certain functional commonalities of two games—the maze and scoring table, the tunnel exits, the dots that gauge and reward the player—as uncopyrightable. *Atari*, 672 F.2d at 617. It found infringement based on the following wholly expressive elements:

> Rather, it is the substantial appropriation of the PAC-MAN characters that requires reversal of the district court. The expression of the central figure as a "gobbler" and the pursuit figures as "ghost monsters" distinguishes PAC-MAN from conceptually similar video games . . . . PAC-MAN's particular artistic interpretation of the game was designed to create a certain impression which would appeal to a nonviolent player personality. *The game as such, however, does not dictate the use of a "gobbler" and "ghost monsters.*"

*Id.* at 617-18 (emphasis added) (footnotes omitted). Thus, the specific depiction of the *PAC-MAN* characters—which was not necessary to the functioning of the game—was the basis of the court's finding of infringement. *See also Midway Mfg. Co. v. Bandai-Am., Inc.*, 546 F. Supp. 125, 151-52 (D.N.J. 1982) (finding the protectable features of *PAC-MAN* to be the depiction of the characters, the musical themes, and a cartoon sequence played before the beginning of the game). That is, "the game as such" did not mandate the use of these elements—thus, they were copyrightable.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 6
Civil Action No. 12-cv-147

**BYRNES ♦ KELLER ♦ CROMWELL** LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Similarly, in *Data East USA, Inc. v. Epyx, Inc.*, a karate game accused of infringement had fifteen features in common with the plaintiffs' work—most of which were karate game moves. 862 F.2d 204, 209 (9th Cir. 1988). The Court held these features to be unprotectable, reasoning that these were "game procedure, common karate moves, the idea of the background scenes, a time element, a referee, computer graphics, and bonus points, [that] result[ed] from either constraints inherent in the sport of karate or computer restraints." *Id.* Once the court filtered out those similarities from the infringement analysis, the court found no infringement. *Id.*

In sum, copyright law expressly excludes from its scope the idea of a game and its functional elements—including rules, play and mechanics. It is important to note that the U.S. system of intellectual property rights does not leave creators of games (like both Spry Fox and 6waves) unprotected. First and foremost, copyright *does* protect the expressive, non-functional elements of games. Thus, the creative way in which *Triple Town* displays its bear cannot be copied without liability. Nor can the way in which *Yeti Town* displays its yeti. Second, as indicated in the above cases, patent law can protect the functional aspects of games, as evidenced by the innumerable patents for game rules and ideas. *See, e.g.*, *Anti-Monopoly, Inc. v. Gen. Mills Fun Group*, 611 F.2d 296, 299 (9th Cir. 1979) ( "[d]uring the years 1935 to 1952, Parker Brothers relied primarily on its patents to protect its monopoly of 'Monopoly.'" ); U.S. Patent No. 6,062,978 (patent claiming rules for rotating cube videogame); U.S. Patent No. 6,264,198 (patent claiming rules for jigsaw puzzle videogame); U.S. Patent No. 6,669,565 (rules for a fantasy sports game); U.S. Patent No. 5,265,888 (claiming rules for the popular video game "Dr. Mario"); U.S. Patent Pub. US 2010/0069133 A1 (recently-filed application for a puzzle game rules in which puzzle blocks are manipulated and cleared); U.S. Patent Pub. US 2011/0151976 A1 (recently-filed application for "role based game on a social network"); U.S. Patent Pub. US 2009/0088235 (recently-filed application for rules for a concentric puzzle video game).

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 7
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

### 2.      Spry Fox Alleges Copyright Infringement of Non-Copyrightable Elements Only

Spry Fox's copyright case is predicated on the alleged theft of game ideas and functional elements such as games rules, play, and mechanics.  It repeatedly and expressly accuses *Yeti Town* as having the same "rules and game play" and "underlying premise" as in *Triple Town*.  Complaint at ¶¶ 23, 32-34, 40.  And all of the specific similarities between the two games that Spry Fox identifies belong to these uncopyrightable categories.  Specifically:

- the "role" and "perform[ance]" of the "Yeti," the "Saplings," and other such elements;

- players' ability to purchase advantages for prizes in virtual stores, and the use and number of coins to do so;

- the "scoring system";

- the language of a tutorial, which describes "game play";[1]

- the fact that trapping a nemesis turns him into a different object;

- the fact that there are "characters that destroy good and bad objects";

- a "user interface element" that "help[s] players understand what items will combine into other items";

- another "user interface element" that "appears when a player completes a game of *Triple Town*";

- "limits placed upon the ability of players to purchase advantages"; and

- the fact that "[p]layers must efficiently use their skill and calculation to complete construction of towns by filling a 6x6 grid with such objects as they can, matching

---

[1] While it is true that the Complaint alleges that the specific phrasing of these rules in *Yeti Town* is very similar to that in *Triple Town*, this does not matter where, as here, the rules merge with the expression of the rules.  *See Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir. 1967) (finding no infringement even though defendant had identically copied plaintiff's phrasing of rules, reasoning "When the uncopyrightable subject matter is very narrow, so that the topic necessarily requires . . . at best only a limited number [of forms of expression], to permit copyrighting would mean that a party or parties, by copyrighting a mere handful of forms, could exhaust all possibilities of future use of the substance."); *see also Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F. Supp. 154, 158 (S.D.N.Y. 1980) (citing this quotation of *Morrissey* with approval), *aff'd*, 657 F.2d 262 (2d Cir. 1981).  Regardless, if this is all Spry Fox's copyright claim amounts to, such copying would be *de minimis*.  *See Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) (recognizing no copyright violation where a taking "is so meager and fragmentary that the average audience would not recognize the appropriation").

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 8
Civil Action No. 12-cv-147

1

2

objects to advance those objects up a defined hierarchy of objects, and the cumulative effect of populating the grid is to give greater and greater value to the resulting town." *Id.* at ¶¶ 23-24, 31-40.

3

4

Once it decided to sue 6waves for copyright infringement, Spry Fox had no choice but to accuse uncopyrightable elements in *Yeti Town*.  That is because *Yeti Town* does not contain a single protected element of *Triple Town*.  *Triple Town*'s bear looks nothing like its alleged *Yeti Town* counterpart, a yeti; *Triple Town*'s grass looks nothing like its alleged *Yeti Town* counterpart, a sapling; *Triple Town*'s crystal looks nothing like its alleged *Yeti Town* counterpart, the snowflake; and so on.  Every single screenshot comparison within Spry Fox's own complaint reveals that the artistic elements of the respective games—such as the characters, the background art, and even the claimed arrangement of the "user interface elements"—are different.  The following is every screenshot comparison in the complaint, which demonstrates that neither the individual visual elements nor the overall visual arrangement and impressions of the two games are anything alike:

5

6

7

8

9

10

11

12

13

14

15

16

17



18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 9
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21

22  *Id.* at ¶¶ 34-39.  Thus, Spry Fox's copyright claim does not allege infringement of any

23  protectable element.  While Spry Fox does make conclusory allegations that *Yeti Town*

24  incorporates copyrightable elements of *Triple Town*, such as its "visual presentation of each

25  screen display," and "overall look and feel," there is no factual support for these allegations.  In

26  fact, these allegations are belied by the very screenshots provided in the complaint itself.  Such

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 10
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

tactics are expressly prohibited under the pleading standard announced by the Supreme Court in *Twombly* and *Iqbal*, described and quoted above in Section III.A.

Spry Fox's copyright case does not fail because it is inartfully pled. Rather, it fails because any elements the games have in common are not protected by copyright. This is plain from the face of the complaint, and there is nothing Spry Fox can do to change that. *See U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

### 3.   The Court Should Award 6waves Its Costs and Attorneys' Fees for Defending Against This Copyright Claim

Under the Copyright Act, "the court in its discretion may allow the recovery of . . . full costs . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of costs." 17 U.S.C. § 505. The Ninth Circuit has explained that the decision to award attorneys' fees is within the "sound discretion" of the district court, and "such discretion is not cabined by a requirement of culpability on the part of the losing party." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996). District courts in the Ninth Circuit often consider the following factors in deciding whether to award attorneys' fees:  (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (factually and legally), and (5) the need to advance compensation and deterrence. *Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1230 (9th Cir. 2008). All factors need not be met, nor are they exclusive. *Fantasy*, 94 F.3d at 558.

Here, Spry Fox's claim that 6waves violated its copyright to *Triple Town* is frivolous and objectively unreasonable:  Clearly established copyright law exempts from its scope the idea for a game and its functional elements such as rules, mechanics, and play, as shown in detail above—and this is all Spry Fox has accused 6waves of copying. Spry Fox, and other similarly situated would-be litigants, should be deterred from bringing a claim like this. Thus, the Court should award 6waves its costs and attorneys' fees in defending this copyright claim.

1

2

Indeed, a recent court, applying Ninth Circuit law, did this very thing.  In *Zobmondo*

*Entertainment LLC v. Falls Media LLC*, the Central District of California awarded the prevailing

3

defendant attorneys' fees for defending against a "baseless" copyright claim that it copied

4

plaintiff's rules in a card game.  The court reasoned:

5

6

7

8

9

> Ultimately, the pivotal question is whether an award of attorney's fees would be
> faithful to the purposes of the Copyright Act.  Although the Copyright Act serves
> to prevent infringement, "copyright law ultimately serves the purpose of enriching
> the general public through access to creative works.  In this regard, baseless
> claims, such as the game rules and cards claims, are inimical to the purposes of
> the Copyright Act. These types of claims, and fear of specious lawsuits, can chill
> creative expression resulting in the diminution of creative works.  An award of
> attorney's fees would serve as a deterrent for such claims.

10

11

12

> Accordingly, although the Court does not see why Falls Media should recover
> fees on all of the copyright claims, the Court finds that an award of attorney's fees
> to Falls Media for defending the claims that it infringed the copyrights in
> Zobmondo's game rules and cards is proper.

13

14

15

*Zobmondo Entm't LLC v. Falls Media LLC*, No. CV 06-3459ABCJTLX, 2009 WL 202034, at *3

(C.D. Cal. Jan. 23, 2009) (internal citations and quotations omitted).  The same reasoning applies

here.

16

### C.    Spry Fox's Trademark Claim Fails

17

To show trademark infringement of an *unregistered* mark, a plaintiff has the burden to

18

show:  (1) that it has a valid, protectable trademark, and (2) that defendant is using a mark that is

19

20

confusingly similar to its mark.  *See* 15 U.S.C. §§ 1114, 1125(a); *Filipino Yellow Pages, Inc. v.*

*Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

21

Spry Fox's trademark claim fails because it does not state a claim "that is plausible on its

22

face."  *Iqbal*, 129 S. Ct. at 1949.  Specifically, Spry Fox has failed to plausibly allege that the

23

mark *Yeti Town* infringes—i.e., is confusingly similar to—the mark *Triple Town*.[2]  The only non-

24

25

26

---

[2] It is also doubtful whether Spry Fox has adequately alleged a valid trademark, as is its burden for
bringing a claim based on an unregistered mark.  *See Filipino Yellow Pages*, 198 F.3d at 1151.  The term
*Triple Town* refers to the fact that a player places three elements together to create a match ("Triple"), in a
virtual town ("Town").  At best the mark is descriptive, and at worst, generic.  Regardless, it is impossible
to know what position Spry Fox takes in defending the validity of its mark, as the complaint is silent on

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 12
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

conclusory factual allegation related to this requirement is the following:  "The font type/graphic style for 'Yeti Town' is markedly similar to 'Triple Town.'  LOLApps have placed the name 'Yeti Town' in or around the same locations throughout the game as in Triple Town."  Complaint at ¶ 52.  Even assuming that the name *Yeti Town* is placed in similar locations as in *Triple Town*, there can be no infringement of the font types and graphic styles of the marks, as the two are drastically different:



http://www.tripletown.com/; http://itunes.apple.com/us/app/yeti-town/id489567928?mt=8.[3]

Notably, Spry Fox does not seek a trademark registration for the font type or graphic style of the mark *Triple Town*; it seeks registration of the text only.  *See* http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=85480331.[4]

Moreover, under Ninth Circuit law, the name *Yeti Town* does not infringe the name *Triple Town* as a matter of law.  The Ninth Circuit has held that there is infringement of a title only if "the [accused] title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, . . . [it] explicitly misleads as to the source or content of the work."  *Mattel*, 296 F.3d at 902 (internal citation omitted).  Applying this standard, a recent court dismissed under Rule 12(b)(6) a claim that the video game title *Dawn of the Dead* infringed the trademark

---

this point.

[3] A court may consider on a Rule 12(b)(6) motion those "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (overruled on other grounds); *see also Capcom Co. v. MKR Group, Inc.*, No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) (taking judicial notice in a trademark and copyright case of the contents of the video game *Dawn of the Dead* (the copyrighted work) and the video game *Dead Rising* (the accused work)).

[4] A court may also consider "matters of public record."  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

1    to the video game title *Dead Rising*.  The Court held that the two marks were not confusingly

2    similar, reasoning as follows:

3           MKR next maintains the titles, Dawn of the Dead and Dead Rising, are
            confusingly similar because both share the term "dead" and connote the same
4           meaning of zombies awakening . . . .  Under the first part of *Mattel*, MKR
            acknowledges that Dead Rising refers to zombies contained within the game.
5           Under the second part, Dead Rising as a title must explicitly mislead as to the
            source of the work, which it simply does not do.  Moreover, the shared use of one
6           word and the idea of zombies awakening is not enough to sustain a charge of
            infringement because when a defendant uses less than the whole of a plaintiff's
7           mark, it must appear that the part taken identifies the owner's product without the
            rest.  MKR cannot demonstrate that "dead," standing alone, identifies either the
8           movie or the video game as a whole.  Indeed, that common word is contained in
            countless movies and game products.
9

10

11   *Capcom*, 2008 WL 4661479, at *13 (internal citations omitted).  The same reasoning directly

12   applies to this case.  *Yeti Town* refers to a virtual town populated by yetis.  And, as with *Dawn of*

13   *the Dead* and *Dead Rising*, the only term the two games share is a highly common one

14   ("Town")—and that cannot serve to mislead as to the source of the work.  Indeed, even a basic

15   Google search of "Town video game" reveals a glut of video games using the word "Town" in

16   their titles—and in all cases the term refers to a virtual town in which the user plays the game.

17   Examples include:  *Ghost Town*, *Mineral Town*, *Roman Town*, *Big Town*, *Tonka Town*, *Toa*

18   *Payoh New Town*, *Fantasy Town*, *Twilight Town*, *Bubble Town*, *Hill Town*, and *Big Bible Town*.

19   *Triple Town* does not appear anywhere close to the top of the list.

20           Not only does Spry Fox's claim fail under clearly-established Ninth Circuit law, it also

21   fails under the commonsensical test described in *Glenmore Distilleries Company v. National*

22   *Distillers Products Corporation*.  There, the court held that "[w]here the competing trade-marks

23   each consists of two words, the last word in each being the same and the first word in each being

24   distinctly different, the great weight of authority is that no infringement exists."  *Glenmore*

25   *Distilleries Co. v. Nat'l Distillers Prods. Corp.*, 23 F. Supp. 928, 931 (E.D. Va. 1938) (holding

26   that "Town Tavern" did not infringe "Kentucky Tavern"); *see also Old Charter Distillery Co. v.*

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 14
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*Continental Distilling Corp.*, 174 F. Supp. 312, 321 n.52 (D. Del. 1959) (citing *Glenmore* for same).  Here, the only term the two marks have in common is "Town."  "Yeti" and "Triple" are so drastically different that no consumer could confuse the two.

In sum, Spry Fox's trademark allegations amount to nothing more than a listing of two very different marks and a conclusion that these marks are "confusingly similar."  This does not rise to the level of "facial plausibility" based on non-conclusory allegations, as required by the Supreme Court in *Iqbal* and *Twombly*.  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570.  And, as with the copyright claim, there is nothing Spry Fox can do to cure this deficiency:  the Court should dismiss its trademark claim without leave to amend.

## IV.   **CONCLUSION**

The Court should dismiss Spry Fox's complaint for failing to state a claim upon which relief can be granted.  Its copyright claim is predicated on alleged copying of blatantly non-copyrightable elements—so much so that a court has already awarded attorneys' fees for bringing similar such claims (and this Court should do the same).  Its trademark claim is facially invalid; under no scenario can the *Yeti Town* mark infringe *Triple Town*'s.

The Court should also deny Spry Fox leave to re-formulate its complaint.  The games and their titles are what they are, and there is nothing Spry Fox can do to change that.

DATED this 27th day of February, 2012.

BYRNES KELLER CROMWELL LLP


By /s/ Jofrey M. McWilliam
   Bradley S. Keller, WSBA #10665
   Jofrey M. McWilliam, WSBA #28441
1000 Second Avenue, 38th Floor
Seattle, WA 98104
206-622-2000
Fax:  206-622-2522
bkeller@byrneskeller.com
jmcwilliam@byrneskeller.com

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 15
Civil Action No. 12-cv-147

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DURIE TANGRI LLP

Ragesh K. Tangri *(pro hac vice pending)*
rtangri@durietangri.com
Sonali D. Maitra *(pro hac vice pending)*
smaitra@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:  415-362-6666
Facsimile:  415-236-6300

Attorneys for Defendants
LOLAPPS, INC., LOLAPPS MERGER SUB,
INC., and 6Waves LLC

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 16
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on February 27th, 2012 with a copy of this document via the Court's CM/ECF system.

Mark Lawrence Lorbiecki
LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, WA 98104
Telephone:  206-381-3300
Facsimile:  206-381-3301
Email:  Lorbiecki@lowegrahamjones.com

Attorney for Plaintiff
SPRY FOX LLC

/s/ Jofrey M. McWilliam
Jofrey M. McWilliam
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
jmcwilliam@byrneskeller.com

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 17
Civil Action No. 12-cv-147

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000