HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SPRY FOX, LLC,

                Plaintiff,

      v.

LOLAPPS, INC., et al.,

                Defendants.

CASE NO. C12-147RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss Plaintiff's complaint.  Dkt. # 10.  Although both parties requested oral argument, the court finds oral argument unnecessary.  For the reasons stated below, the court GRANTS the motion in part and DENIES it in part.  The court denies the motion as it applies to Plaintiff's claim of copyright infringement, but grants it without prejudice as it applies to Plaintiff's claim for a violation of the Lanham Act.  If Plaintiff wishes to amend its complaint to attempt to state a Lanham Act claim, it shall do so no later than October 18, 2012.

## II.  BACKGROUND

The court recites the facts as Plaintiff Spry Fox, LLC, alleges them in its complaint.

Spry Fox makes video games.  Among them was a game it dubbed "Triple Town," which was originally available for play on Amazon's Kindle device.  Because Triple

ORDER – 1

Town enjoyed some success on the Kindle, Spry Fox hoped to develop versions for other platforms, including the Facebook and Google+ social networks.  Spry Fox approached Defendant 6Waves, LLC,[1] for assistance.  Ultimately, Spry Fox decided to develop the Facebook version of Triple Town on its own, but continued discussions with 6Waves about developing a version of Triple Town for iOS, the operating system for Apple's iPhone and iPad devices.  In July 2011, 6Waves and Spry Fox entered into a nondisclosure agreement granting 6Waves privileged access to Triple Town.

In December 2011, 6Waves delivered Spry Fox two pieces of bad news: it would no longer develop an iOS version of Triple Town; and it would release "Yeti Town," its own iOS game.  According to Spry Fox, Yeti Town is a knockoff of Triple Town.  Spry Fox is not alone in its view.  The complaint reveals that several video game bloggers compared the two games and reached the same conclusion.  Indeed, the 6Waves executive who wrote to Spry Fox to announce the publication of Yeti Town proclaimed that Spry Fox was "not going to like [it] given its similar match-3 style."

No one would deny the many similarities between Triple Town and Yeti Town.  Those similarities pervade the games, from their underlying concepts to their rules to the visual appearance of their characters and backgrounds.  There are differences too.  The court describes the similarities and differences here, acknowledging that its written description of the visual aspects of the games is not as effective as the side-by-side "screen shots" that Spry Fox provided in its complaint, and that those screen shots are in turn less effective as a comparison between the two games than actually playing them.  Neither Spry Fox nor 6Waves suggested that the court should compare Triple Town and Yeti Town by actually playing them.

---

[1] Spry Fox named as Defendants three closely-related corporate entities with a role in the production of Yeti Town: 6Waves, LOLApps, Inc., and LOLApps Merger Sub, Inc.  For simplicity, the court refers to them collectively as 6Waves.

ORDER – 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The action in both games takes place on a six-by-six grid.  Each game provides a player a series of objects to place in the squares of the grid.  When a player places an object such that three identical objects connect, those matching objects disappear, replaced by an object that is one step up in the game's hierarchy.  In Triple Town, the object at the bottom of the hierarchy is a patch of grass.  Three patches of grass connected together become a bush, three connected bushes become a tree, three connected trees become a hut, and so on.  In Yeti Town, the object at the bottom of the hierarchy is a sapling.  Three connected saplings become a tree, three connected trees become a tent, three connected tents become a cabin, and so on.  Also in play are antagonistic objects that frustrate a player's ability to place other objects where he or she chooses.  In Triple Town, the antagonist is a bear.  In Yeti Town, the antagonist is a yeti.  A player can place objects to "trap" a bear or a yeti.  A trapped bear becomes a gravestone; a trapped yeti becomes an ice cube.  A third class of objects can destroy any other object: "Imperial Bots" in Triple Town and campfires in Yeti Town.

In both games, the placement and hierarchical transformation of objects progressively builds the game grid and earns points for the player.  Eventually, the player achieves the goal of building a "plain" (in Triple Town) or a "patch" (in Yeti Town).  Players earn points along the way, but in both games they also earn "coins" that permit them to purchase favorable objects or other strategic advantages at an in-game store.  According to the complaint, the Yeti Town marketplace assigns the same prices in "coins" as the prices Triple Town assigns for analogous objects or advantages.  Players can also use actual currency to purchase coins from either Spry Fox or 6Waves.  Spry Fox claims that 6Waves copied another aspect of Triple Town: the decision to limit the number of purchases a player can make.

As players play either game, dialogue boxes pop up to explain game concepts.  For example, a Triple Town dialogue box explains that "Grass turns into bushes, bushes into

ORDER – 3

trees, trees into huts, and so on."  An analogous box in Yeti Town tells players that "Saplings become Trees.  Trees become Tents.  Tents become Cabins and so on."  The complaint illustrates several other examples of dialogue boxes in the two games that use similar (but not identical) language to describe various aspects of game play.

There are visual differences between the games.  The game grid in Triple Town resembles a field or meadow; the grid in Yeti Town resembles a snowfield.  "Bears" in Triple Town do not look particularly like bears, "yetis" in Yeti Town do not look particularly like yetis, and the "bears" and the "yetis" do not look particularly like each other.  The same is true, to varying degrees, of the other objects in the game.  For example, the "trees" in both games are similarly-depicted evergreens, although Triple Town uses a single tree as opposed to Yeti Town's grove of three trees.  Both games are surrounded at their margins by displays of a player's point total, "coin" total, links to the in-game marketplace and other aids, along with reminders of each game's rules.  The arrangement of these marginal elements is similar, but not identical.

The question in this case is not whether the games are similar (they certainly are), but whether that similarity amounts to an infringement of Spry Fox's copyright in Triple Town or an infringement of Triple Town's trademark or trade dress.  In its motion to dismiss, 6Waves contends that Spry Fox's complaint fails to plausibly allege copyright or trademark infringement.

### III.  ANALYSIS

6Waves invokes Fed. R. Civ. P. 12(b)(6), which permits a court to dismiss a complaint for failure to state a claim.  The rule requires the court to assume the truth of all of the complaint's factual allegations and credit all reasonable inferences arising from its allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If it does so, its complaint survives

ORDER – 4

1    dismissal as long as there is "any set of facts consistent with the allegations in the

2    complaint" that would entitle the plaintiff to relief.  *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S.

3    662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume

4    their veracity and then determine whether they plausibly give rise to an entitlement to

5    relief.").  The court typically cannot consider evidence or allegations beyond the four

6    corners of the complaint, although it may rely on a document to which the complaint

7    refers if the document is central to the party's claims or defenses and its authenticity is

8    not in question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The court may also

9    consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908

10   (9th Cir. 2003).

11   **A.     Copyright Infringement**

12          A claim of copyright infringement requires a plaintiff to prove that it has a valid

13   copyright on the work in question and that the defendant copied the work.  *Shaw v.*

14   *Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990).  Except in the rare case where there is

15   direct evidence that the defendant copied the plaintiff's work, a plaintiff proves copying

16   by showing that the defendant had access to the work and that the two works are

17   substantially similar.  *Id.*  For purposes of this motion, there is no dispute that Spry Fox

18   has a valid, registered copyright in Triple Town.

19          There is also no serious dispute that Spry Fox has adequately alleged 6Waves'

20   access to Triple Town.  The complaint explains that as part of their failed business

21   negotiations, Spry Fox gave 6Waves privileged access to Triple Town.  6Waves does not

22   dispute that this is a sufficient allegation of access.  Instead, it recites its own version of

23   the facts, one in which another company independently developed Yeti Town, then

24   6Waves purchased the company.  6Waves provides no evidence to support its story, and

25   it would make no difference if it had.  On a motion to dismiss, the court relies solely on

26

27

28   ORDER – 5

1    the allegations of the plaintiff's complaint.  Spry Fox's allegations make out a plausible

2    claim of access.

3            It is the determination of substantial similarity that is the crux of the parties'

4    dispute.  In the Ninth Circuit, a work is substantially similar only if it passes an extrinsic

5    test and an intrinsic test.  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442

6    (9th Cir. 1994).  The extrinsic test considers the objective similarities between both the

7    ideas inherent in the copyrighted work and way the work expresses those ideas.  *Id.*; *see*

8    *also Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ("Although

9    originally case as a 'test for similarity of ideas,' the extrinsic test, now encompassing all

10   objective manifestations of *expression*, no longer fits that description.") (emphasis in

11   original, internal citation to *Sid & Marty Krofft Television Prods., Inc.*, 562 F.2d 1157,

12   1164 (9th Cir. 1977), omitted).  The intrinsic test is a subjective comparison of the two

13   works through the eyes of an ordinary observer, focusing on the "total concept and feel"

14   of the two works.  *Cavalier*, 297 F.3d at 822; *Apple*, 35 F.3d at 1442.

15           The extrinsic test requires, among other things, that the court determine which

16   allegedly similar elements of the two works are protectable.  The court can compare only

17   the protected elements of a work to the allegedly infringing work.  *Apple*, 35 F.3d at

18   1443; *Cavalier*, 297 F.3d at 822 (directing court to "filter out and disregard the non-

19   protectible elements" when conducting the extrinsic test).  Courts use the phrase "analytic

20   dissection" to refer to the process of determining which elements are protectable and

21   which are not.  *Apple*, 35 F.3d at 1443; *Brown Bag Software v. Symantec Corp.*, 960 F.2d

22   1465, 1476 (9th Cir. 1992).  The protectability of an element of a copyrighted work is an

23   issue of law.  *Apple*, 35 F.3d at 1443.

24           Copyright does not protect the ideas underlying a work or other aspects that are

25   beyond the scope of the Copyright Act.  By statute, copyright does not "extend to any

26   idea, procedure, process, system, method of operation, concept, principle, or discovery,

27

28   ORDER – 6

regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Several judicial doctrines ensure that copyright does not extend to the ideas underlying a work. Some ideas are indistinguishable from their expression, a copyright law principle known as merger. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765 (9th Cir. 2003). For example, although a designer can copyright a jeweled bee pin, that copyright will not protect the idea of representing a bee in jeweled-pin form. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971) ("A jeweled bee pin is therefore an 'idea' that defendants were free to copy. . . . There is no greater similarity between the pins of plaintiff and defendants than is inevitable from the use of jewel-encrusted bee forms in both."). Expressions that are standard in the treatment of an idea, known as *scènes à faire*, are also not protectable. *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988). For example, a copyright in a video game based on tournament karate can prevent no one from creating another video game with competitors wearing *karategi* facing off with kicks, chops, and punches under the watchful eye of a referee. *Id.* at 209 (finding no copyright infringement where the similar features in two video games were the result of "constraints inherent in the sport of karate").

With these general principles in mind, the court turns to the two video games before the court. Before determining to what extent the idea inherent in Triple Town dictates its expression, it is necessary to separate its idea from its expression. Courts frequently acknowledge the difficulty of this task. *E.g.*, Apple, 35 F.3d at 1443 ("It is not easy to distinguish expression from ideas, particularly in a new medium."); *Krofft*, 562 F.2d at 1163 ("The difficulty comes in attempting to distill the unprotected idea from the protected expression."). At this stage of the litigation, where the court has only the complaint, its description of Triple Town, and the accompanying screen shot images, the court concludes that the idea underlying Triple Town is that of a hierarchical matching

ORDER – 7

game, one in which players create objects that are higher in the hierarchy by matching three objects that are lower in the hierarchy. Frustrating the player's efforts are antagonist objects; aiding the player are objects that destroy unwanted or ill-placed objects. Spry Fox's copyright gives it no monopoly over this idea. 6Waves (or anyone else) is free to create a video game based on the same idea.

Spry Fox expressed the idea underlying Triple Town in its own way. It chose an object hierarchy that progresses from grass to bushes to trees to houses and beyond. It chose a bear as the antagonist object and a "bot" as the object with the power to destroy others. It chose its own visual depiction of each of those objects. It placed all of those objects on a field of play that resembles a field or meadow. These are protectable expressive elements. In a literary work like a novel or screenplay, the "measurable, objective elements that constitute [its] expression" include the "plot, theme, dialogue, mood, setting, pace, characters, and sequence of events . . . ." *Shaw*, 919 F.2d at 1359; *cf. Brown Bag*, 960 F.2d at 1472-73 (considering potentially expressive elements of outlining software). A video game, much like a screenplay expressed in a film, also has elements of plot, theme, dialogue, mood, setting, pace, and character. Spry Fox took the idea underlying Triple Town and expressed it with its own characters, its own setting, and more. These objective elements of expression are within the scope of Spry Fox's copyright.

Some of Spry Fox's expressive choices are not protectable because they are *scènes à faire* in many video games (and often in games in general). For example, the use of points and "coins" to reward a player's progress through a game is standard. *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 617 (7th Cir. 1982) (finding that scoring system in video game was not entitled to protection); *see also Data East*, 862 F.2d at 209 (finding similarities between video games' "method of scorekeeping" to be "inconsequential"). This is true whether the points are called "units" or the "coins" are

ORDER – 8

called "dollars" or any of numerous variations.  The display of visual game tips in the margins of the game screen is also a standard feature.  (The visual style of the tip display, by contrast, is protectable expression.)  Finally, the notion of an in-game marketplace where the player can redeem coins for game advantages is common in many games.

The language that Spry Fox uses in its in-game dialogue boxes is copyrightable, but the scope of protection for that language is thin.  There are only so many ways to express the concept of objects in a hierarchy transforming into objects that are higher in the hierarchy.  *See Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984) (noting that expressions of board game rules "cannot be expressed in a wide variety of ways.  Just about any subsequent expression of that idea is likely to appear to be a substantially similar paraphrase of the words . . . .").  The same is true of the expression of the concept of redeeming "coins" for in-game rewards.  These expressions are protected only from nearly identical copying.  *See id.* (requiring "verbatim reproduction or very close paraphrasing" for infringement of factual work).

Although the court need not decide the issue in this motion, it appears that some elements of Triple Town are not protectable because they are functional.  Much as copyright does not protect ideas, it does not protect the "functional process[es]" that are "indispensable to the idea" inherent in a game.  *Apple*, 35 F.3d at 1444 (considering functional ideas in computer operating system user interface).  For example, Spry Fox's choice of a six-by-six game grid is not likely an expressive choice.  A grid that is too small would make the game trivial; a grid that is too large would make it pointless.  There is perhaps a range of functionally appropriate choices for the dimensions of the game grid; perhaps a seven-by-seven grid, or a six-by-seven grid, would serve the game's purposes just as well.  But it would extend copyright protection beyond its proper scope to afford protection to a functionally-dictated choice like this one.  *Id.* at 1446 (citing Third Circuit case "defining idea of utilitarian work as its purpose or function, and

ORDER – 9

everything not necessary to that purpose as expression"). Similarly, the pricing structure in Triple Town's marketplace, along with its strategic limits on how many advantages a player can purchase, are functional considerations.

Like the language Spry Fox uses in Triple Town's dialog boxes, the rules of the game are entitled to (at best) thin protection. Game rules are a hybrid of the concept of the game and functional considerations. For example, the rule that players progress up Triple Town's object hierarchy by forming groups of at least three adjacent objects is in part an extension of the idea of a matching game, and in part a functional consideration to make game play interesting. Similarly, the notion of exchanging earned "coins" for strategic advantages is an idea inherent in game play. A game designer could, theoretically, make expressive choices in presenting the rules of play. It could perhaps use creative language to express the rules. But that language, as an expression of game rules, would be entitled only to protection against nearly identical copying.

The court also observes that while the title "Triple Town" is not itself copyrightable, the fact that 6Waves chose the title "Yeti Town" is potentially relevant to the substantial similarity inquiry. *Shaw*, 919 F.2d at 1362. It is at least plausible to infer that 6Waves chose the title "Yeti Town" because it was copying "Triple Town," and the trier of fact can consider this inference as it considers the similarity between the two games. *See id.*

Having determined which of the elements of Triple Town are protectable, Spry Fox's allegations are more than adequate to illustrate plausibly the objectively similar expression embodied in Yeti Town. The object hierarchy is similar. Progressing from grass to bush to tree to hut is similar to progressing from sapling to tree to tent to cabin. Perhaps more importantly, the object hierarchy coupled with the depiction of the field of play comprise a setting and theme that is similar to Triple Town's. A snowfield is not so different from a meadow, bears and yetis are both wild creatures, and the construction of

ORDER – 10

a "plain" is not plausibly similar to the construction of a "patch," at least as the two games depict those terms. Whether 6Waves's choice of language in its dialog boxes is similar enough to Spry Fox's is a closer question, but it is a least plausibly similar. There are apparent differences between games (for example, yetis are not bears and "bots" are not campfires), but a court must focus on what is similar, not what is different, when comparing two works. Put another way, a writer who appropriates the plot of *Gone with the Wind* cannot avoid copyright infringement by naming its male protagonist "Brett Cutler" and making him an Alaskan gold miner instead of a southern gentleman. The differences between Triple Town and Yeti Town are more meaningful, but it is at least plausible that they are insufficient to overcome the similarities. *See Shaw*, 919 F.2d at 1362 ("No plagiarist can excuse the wrong by showing how much of his work he did not pirate.") (citation omitted); *Cavalier*, 297 F.3d at 827 (finding genuine issue of material fact despite differences between illustrations of stars atop clouds).

With these objective similarities in protected expression,[2] it is at least plausible that Spry Fox can pass the extrinsic test for substantial similarity. In reaching that conclusion, the court notes that the way in which the parties have presented the comparison of the two games necessarily limits the court's analysis of their similarities and differences. It is as difficult to compare two video games by looking at a few screen shots and reading written descriptions of game play as it is to compare two movies by looking at posters and reading excerpts of screenplays. But the court's task at this level is not to reach ultimate conclusions about the full extent of the similarities between Triple

---

[2] Even so-called "unprotectable" elements of a work can be entitled to limited copyright protection. Where the idea underlying a work merges with its expression, that expression receives protection from "nearly identical copying." *Apple*, 35 F.3d at 1444. Copyright also protects the "original selection and arrangement" of otherwise unprotectable elements. *Cavalier*, 297 F.3d at 826; *see also Brown Bag*, 960 F.2d at 1476 n.4; *Apple*, 35 F.3d at 1445. Because it would not modify the result the court reaches today, the court does not consider whether 6Waves used "nearly identical" copies of the unprotected elements of Triple Town or whether it copied an original selection and arrangement of unprotected elements.

ORDER – 11

Town and Yeti Town.  Instead, the court decides only that Spry Fox has plausibly alleged objective similarities between the expressive elements of Triple Town and Yeti Town.

It is also plausible that Spry Fox can pass the intrinsic test for similarity.  It is plausible that an ordinary observer, even after being instructed to ignore similarities that arise from unprotected ideas and functional choices, would find that Yeti Town and Triple Town have a substantially similar total concept and feel.  To illustrate that point, it is not necessary to go beyond the reports of video game bloggers that Spry Fox describes in its complaint.  The bloggers, who are ordinary observers of video games, find Yeti Town and Triple Town to be substantially similar.  Putting that aside, however, it is likely that Spry Fox plausibly satisfies the intrinsic test merely by virtue of its allegations that plausibly satisfy the extrinsic test.  In *Shaw*, the court established the rule that where the application of the extrinsic test to two literary works reveals genuine issues of material fact, it necessarily reveals an issue of material fact as to the intrinsic test.  *Shaw*, 919 F.2d at 1360; *Funky Films, Inc. v. Time Warner Ent'mt Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006).  The Ninth Circuit has so far declined to decide whether the same rule applies to visual works (like computer programs).  *See Apple*, 35 F.3d at 1447 (declining to decide whether *Shaw* rule is confined to literary works); *Cavalier*, 297 F.3d at 826 ("It is not clear whether the rule in *Shaw* – that when comparison of literary works under the extrinsic test presents a triable issue of fact, the question of substantial similarity necessarily survives summary judgment and must go to the jury – applies to art work."); *Brown Bag*, 960 F.2d at 1476-77 (finding *Shaw* rule potentially applicable to visual elements of computer software, but distinguishing *Shaw* on other grounds).  The court assumes, however, that the *Shaw* rule would apply in comparing these two works, and that Spry Fox's allegations that plausibly satisfy the extrinsic test for substantial similarity necessarily satisfy the intrinsic test.

ORDER – 12

1       Because the allegations of its complaint plausibly satisfy both the intrinsic and

2   extrinsic test, Spry Fox has plausibly alleged substantial similarity between Triple Town

3   and Yeti Town.  Even a relatively small amount of copying can permit the trier of fact to

4   find substantial similarity.  *Shaw*, 919 F.2d at 1363.  Here, Spry Fox has plausibly

5   identified enough copying to state a claim for relief.

6       The court's task today, determining whether Spry Fox has *plausibly alleged*

7   copyright infringement, is comparatively simple.  Other courts, conducting substantial

8   similarity analyses of video games on summary judgment or on motions for preliminary

9   injunction, have taken on a more difficult and nuanced task.  *See*, *e.g.*, *Atari*, *supra*,

10  (considering infringement of Pac-Man, perhaps the most well-known early video game);

11  *Tetris Holding, LLC v. Xio Interactive, Inc.*, Civ. No. 09-6115, 2012 U.S. Dist. LEXIS

12  74463 (D.N.J. May 30, 2012) (comparing versions of iconic Tetris video game); *Atari*

13  *Games Corp. v. Oman*, 979 F.2d 242 (D.C. Cir. 1992) (considering challenge to Registrar

14  of Copyright's failure to issue copyright certificate for Breakout video game); *Frybarger*

15  *v. IBM Corp.*, 812 F.2d 525 (9th Cir. 1987) (considering similarities between mousetrap-

16  themed video games).  The court's analysis today has relied almost entirely on Ninth

17  Circuit authority, including Ninth Circuit cases that have examined video games and

18  computer software.  *Data East*, *Apple*, *Brown Bag*, all cited *supra*.  The court

19  acknowledges, however, that it has considered the out-of-circuit authority listed above to

20  the extent it illustrates the application of uncontroversial copyright principles to the ever-

21  evolving field of video games.  The parties have cited more out-of-circuit authority than

22  the court need acknowledge in this order.  Should the parties make additional motions to

23  the court, the court urges them to remember the difference between binding and

24  persuasive authority, and to cite case law accordingly.

25

26

27

28  ORDER – 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Lanham Act**

In addition to its copyright claim, Spry Fox invoked section 43(a) of the Lanham Act, which gives a cause of action for "false designation of [the] origin" of goods or "false or misleading representation[s] of fact."  15 U.S.C. § 1125(a).  Section 43(a) supports a variety of theories of recovery, including infringement of registered and unregistered trademarks, infringement of trade dress, and false advertising.  *See Goto.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) (trademark and trade dress); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (false advertising).  Spry Fox's complaint, however, unambiguously states only a single species of Lanham Act violation: a claim for infringement of its unregistered "Triple Town" trademark.

6Waves argued that the court should dismiss Spry Fox's trademark infringement claim; Spry Fox responded by ignoring that argument and instead defending a claim it never asserted: a claim for trade dress infringement.  Trade dress "refers generally to the total image, design, and appearance of a product, and may include features such as size, shape, color, color combinations, texture, or graphics."  *Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (internal quotation omitted).  The court agrees with 6Waves that no one could read Spry Fox's complaint and understand it to state a claim for trade dress infringement.  Moreover, Spry Fox's refusal to address 6Waves' attack on its trademark infringement claim is a tacit admission that it cannot sustain the claim.

The court declines to decide whether Spry Fox can state a valid Lanham Act claim.  The court will not analyze a trade dress claim that is not part of Spry Fox's complaint, and it will not address 6Waves' effort to dismiss Spry Fox's trademark claim on the merits where Spry Fox itself has declined to do so.  Instead, the court will dismiss Spry Fox's trademark claim without prejudice.  Spry Fox may, if it chooses, amend its

ORDER – 14

complaint to state a Lanham Act claim.  If it does so, however, it must be explicit as to what species of Lanham Act claim it hopes to assert.  It must also be mindful of the Ninth Circuit's admonition that the Lanham Act is a poor vehicle for addressing claims that fall squarely within the realm of copyright.  *See Shaw*, 919 F.2d at 1364-65 ("We decline to expand the scope of the Lanham Act to cover cases in which the Federal Copyright Act provides an adequate remedy.").  The Lanham Act focuses on protecting consumers and manufacturers from confusion arising from false designations of the origin of goods.  While consumers might find Yeti Town and Triple Town to be substantially similar as a matter of copyright law, a starkly different standard of similarity applies to Lanham Act claims.  *See Cleary v. News Corp.*, 30 F.3d 1255, 1261 (9th Cir. 1994).  At least based on the current complaint, a consumer might think of Yeti Town as a Triple Town knockoff, but that consumer would likely recognize that different companies produced the two games.

## IV.  CONCLUSION

For the reasons previously stated, the court GRANTS 6Waves' motion to dismiss as to Spry Fox's Lanham Act claim and DENIES it as to Spry Fox's copyright infringement claim.  If Spry Fox wishes to amend its complaint to state a Lanham Act claim, it must do so no later than October 18, 2012.

DATED this 18th day of September, 2012.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 15